**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William Nathaniel COBB,**
**Defendant–Appellant.**

No. 96–4969.

United States Court of Appeals,
Fourth Circuit.

Argued March 6, 1998.

Decided May 18, 1998.

**ARGUED:** John Robert Haley, Assistant Federal Public Defender, Charleston, SC, for Appellant. Bruce Howe Hendricks, Assistant United States Attorney, Charleston, SC, for Appellee. **ON BRIEF:** J. Rene Josey, United States Attorney, Charleston, SC, for Appellee.

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge, and CLARKE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Chief Judge WILKINSON wrote the opinion, in which Judge MICHAEL and Senior Judge CLARKE joined.

**OPINION**

WILKINSON, Chief Judge:

William Nathaniel Cobb was convicted of carjacking, 18 U.S.C. § 2119, use of a firearm during a crime of violence, 18 U.S.C. § 924(c), and bank fraud, 18 U.S.C. § 1344. Cobb appeals the district court's denial of his motion to dismiss the carjacking and firearm counts. He argues that the federal carjacking statute, which also defined the crime of violence for his firearm conviction, exceeds Congress' authority under the Commerce Clause. Because we find the carjacking statute to lie within the bounds of Congress' commerce power, we affirm the judgment of the district court.

## I.

On the morning of October 6, 1995, Amanda Yezerski departed Charleston, South Carolina in her Mercury Cougar for Savannah, Georgia. Along the way she stopped in Summerville, South Carolina to retrieve cash from an automatic teller machine (ATM) and to fill her car with gas. While pumping gas at a service station, Yezerski saw the defendant loitering in the area. Once she finished at the pump, Yezerski walked around to the driver's side of her car and again noticed Cobb through her peripheral vision. Before she was able to shut her door and drive away, Cobb cornered Yezerski against her car. Yezerski observed that Cobb was carrying a tote bag with a gun partially protruding from it. He demanded her car and told her not to scream. Yezerski did scream, however, and Cobb pulled her from the car and squeezed past her into the driver's seat himself. When she reached into the car in an attempt to retrieve her keys, Cobb started the car. He then proceeded to pull Yezerski's body partially into the car, such that her legs were left dangling out the open door. Cobb then exited the gas station and drove across a multilane highway into a store parking lot, where he pushed Yezerski from the car and drove away.

At the point Yezerski began screaming at the gas station, another woman who had stopped there became aware of the carjacking in progress. That woman, Tuesday Crosby, jumped into her truck and pursued the carjacker. When Cobb exited the store parking lot after pushing Yezerski from the car, Crosby followed him onto the interstate. She ended her pursuit, however, when Cobb extended his arm out the car window and pointed a gun in Crosby's direction. Cobb then moved into the emergency lane and sped off.

Cobb escaped with both Yezerski's Mercury Cougar and purse, which held her cash, debit card, ATM card, and checkbook. Evidence showed that Cobb used Yezerski's debit card to purchase clothing, that he and another woman successfully forged one of Yezerski's checks, and that Cobb made at least five unsuccessful attempts to withdraw money using the stolen ATM card.

Cobb was eventually arrested and indicted by a grand jury on one count of carjacking, 18 U.S.C. § 2119, one count of use of a firearm during that carjacking, 18 U.S.C. § 924(c), and five counts of bank fraud, 18 U.S.C. § 1344. Cobb moved to dismiss the first two counts of the indictment, arguing that the federal carjacking statute was an unconstitutional exercise of Congress' power under the Commerce Clause. The district court denied Cobb's motion and a trial was held in May 1996. The jury found Cobb guilty on all counts of the indictment. The district court sentenced Cobb to a total imprisonment term of 248 months. Cobb now appeals the district court's denial of his motion to dismiss.[1]

## II.

At the time Cobb committed the acts charged in the indictment, the federal carjacking statute provided:

Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—

(1) be fined under this title or imprisoned not more than 15 years, or both,

(2) if serious bodily injury (as defined in section 1365 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and

(3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

18 U.S.C. § 2119. Arguing against the weight of all seven circuits that have considered the question, *see United States v. Romero*, 122 F.3d 1334, 1339 (10th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1310, 140 L.Ed.2d 474 (1998); *United States v.*

---

1. Although Cobb originally raised sentencing issues in his brief to this court, his counsel conceded at oral argument that the district court correctly sentenced his client and that, therefore, the sole remaining issue was the constitutional challenge we address herein.

*McHenry,* 97 F.3d 125, 126–29 (6th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 992, 136 L.Ed.2d 873 (1997); *United States v. Coleman,* 78 F.3d 154, 158–60 (5th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 230, 136 L.Ed.2d 161 (1996); *United States v. Hutchinson,* 75 F.3d 626, 627 (11th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 117 S.Ct. 241, 136 L.Ed.2d 170 (1996); *United States v. Bishop,* 66 F.3d 569, 575–90 (3d Cir.), *cert. denied,* 516 U.S. 1032, 116 S.Ct. 681, 133 L.Ed.2d 529 (1995); *United States v. Robinson,* 62 F.3d 234, 235–37 (8th Cir.1995); *United States v. Oliver,* 60 F.3d 547, 549–50 (9th Cir.1995), Cobb challenges Congress' authority to enact this criminal statute. He contends that, in light of the Supreme Court's decision in *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), section 2119 is beyond the reach of Congress' commerce power and therefore unconstitutional.

Cobb's challenge is without merit. The *Lopez* Court's articulation of the scope of Congress' commerce power is by now familiar. The Court recognized Congress' authority to (1) "regulate the use of the channels of interstate commerce;" (2) "regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce;" and (3) regulate "those activities that substantially affect interstate commerce." 514 U.S. at 558–59, 115 S.Ct. at 1629–30 (citations omitted). When determining whether the Gun–Free School Zones Act of 1990 fit within the third category, the Court found that 18 U.S.C. § 922(q) lacked a "jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." 514 U.S. at 561, 115 S.Ct. at 1631. Because section 2119 does contain just such a jurisdictional element, and because the statute falls within Congress' power to regulate the instrumentalities of interstate commerce, we reject Cobb's constitutional challenge.

### A.

The *Lopez* Court acknowledged that Congress could include a jurisdictional element in criminal statutes to ensure that each instance of criminalized conduct also has "an explicit connection with or effect on interstate commerce." 514 U.S. at 562, 115 S.Ct. at 1631. The Court cited its prior interpretation of the former felon-in-possession statute in *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), as an example of such a jurisdictional requirement. In *Bass,* the Court suggested that the government could satisfactorily prove a nexus with interstate commerce by demonstrating "that the firearm received has previously traveled in interstate commerce." *Id.* at 350, 92 S.Ct. at 524. The Court confirmed that this reading was correct in *Scarborough v. United States,* 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977), holding that the government need only prove "that the firearm have been, at some time, in interstate commerce." *Id.* at 575, 97 S.Ct. at 1969.

In *United States v. Wells,* 98 F.3d 808 (4th Cir.1996), we rejected a *Lopez* challenge to 18 U.S.C. § 922(g), which criminalizes the shipment, transport, possession, or receipt of a firearm by a specific class of persons. Section 922(g) permits the government to prove a commerce nexus by showing that the defendant received a firearm "which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g). We turned aside the constitutional challenge, holding that the jurisdictional element both distinguished the case from *Lopez* and satisfied the requirements of the Commerce Clause. 98 F.3d at 811.

The federal carjacking statute also contains an express jurisdictional element. Section 2119 applies only to the forcible taking of motor vehicles that have been "transported, shipped, or received in interstate or foreign commerce." Thus, in Cobb's case the government was forced to prove—and did prove—that Yezerski's Mercury Cougar was manufactured in Ohio and shipped in interstate commerce to South Carolina. Like our decision in *Wells,* therefore, we find that section 2119's jurisdictional element "distinguishes *Lopez* and satisfies the minimal nexus required for the Commerce Clause." 98 F.3d at 811. Additionally, we note that our holding is in accord with the decisions of four other circuits that have similarly relied on

section 2119's jurisdictional element in finding the statute a valid exercise of Congress' authority under the Commerce Clause. *See Coleman,* 78 F.3d at 159; *Bishop,* 66 F.3d at 585–88; *Robinson,* 62 F.3d at 237; *Oliver,* 60 F.3d at 550.

### B.

■ Section 2119 is also a valid exercise of Congress' power to regulate an instrumentality of interstate commerce—cars. In *Lopez,* the Court confirmed that Congress can protect such instrumentalities, "even though the threat may come only from intrastate activities." 514 U.S. at 558, 115 S.Ct. at 1629. The Court cited *Perez v. United States,* 402 U.S. 146, 150, 91 S.Ct. 1357, 1359–60, 28 L.Ed.2d 686 (1971) (aircraft); *Houston, East & West Texas Ry. Co. v. U.S. (Shreveport Rate Cases),* 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341 (1914) (railroads); and *Southern Ry. Co. v. United States,* 222 U.S. 20, 32 S.Ct. 2, 56 L.Ed. 72 (1911) (rail cars), as examples of cases involving Congress' use of this power. *Lopez,* 514 U.S. at 558, 115 S.Ct. at 1629. The Court has also held that interstate roads, *Alstate Const. Co. v. Durkin,* 345 U.S. 13, 15–16, 73 S.Ct. 565, 566–67, 97 L.Ed. 745 (1953), and toll roads and drawbridges connecting interstate roads, *Overstreet v. North Shore Corp.,* 318 U.S. 125, 129–30, 63 S.Ct. 494, 497–98, 87 L.Ed. 656 (1943), are instrumentalities of interstate commerce because they are essential to the carriage of persons and goods moving in interstate commerce. As the Third Circuit has observed, "Instrumentalities differ from other objects that affect interstate commerce because they are used as a means of transporting goods and people across state lines. Trains and planes are inherently mobile; highways and bridges, though static, are critical to the movement of automobiles." *Bishop,* 66 F.3d at 588.

Undoubtedly, if planes and trains qualify as instrumentalities of interstate commerce, so too do automobiles. The fact that not every car, train, or plane trip has an inter-state destination has never been thought to remove these means of transport from the category of an instrumentality of commerce. Cars, like trains and aircraft, are both inherently mobile and indispensable to the interstate movement of persons and goods. We therefore hold that section 2119 is a valid exercise of Congress' power to regulate and protect an instrumentality of interstate commerce. In this respect, our conclusion is in accord with the decisions of four other circuits. *See McHenry,* 97 F.3d at 126–27; *Bishop,* 66 F.3d at 588–90; *Robinson,* 62 F.3d at 236–37; *Oliver,* 60 F.3d at 550.[2]

### III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED.*

---

**2.** *Because we find that section 2119's jurisdictional element satisfies the nexus required by the Commerce Clause and that section 2119 regulates an instrumentality of interstate commerce,* we need not decide whether the statute can be sustained as a regulation of an activity that substantially affects interstate commerce.