In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2944

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TERRY E. SCHAFFNER,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 00 CR 6--Barbara B. Crabb, Chief Judge.

ARGUED APRIL 5, 2001--DECIDED July 24, 2001


  Before BAUER, RIPPLE and EVANS, Circuit
Judges.

  RIPPLE, Circuit Judge.  Terry E.
Schaffner appeals the district court's
denial of his motion to dismiss the
indictment charging him with the sexual
exploitation of a child in violation of
18 U.S.C. sec. 2251(a). Mr. Schaffner
pleaded guilty, but his plea agreement
allowed him to seek review of the
district court's denial of his motion to
dismiss. Mr. Schaffner argues that
applying sec. 2251(a) to his conduct
exceeds the authority of the federal
government under the Commerce Clause of
the Constitution of the United States.
For the reasons set forth in this
opinion, we affirm the district court's
denial of his motion to dismiss the
indictment.

I

BACKGROUND

A.  Facts

  In April 1997, a 15-year-old girl ran
away from her Wisconsin foster home and
went to Mr. Schaffner's residence. Mr.
Schaffner was 34 years old at the time.
While at his home, Mr. Schaffner and the
girl used methamphetamine, at times
through injections administered by Mr.
Schaffner. After injecting the girl with

drugs, Mr. Schaffner and Calvin Flodquist, a 19-year-old friend of Mr. Schaffner, drove her across state lines to Minnesota. The three then stayed several days at different hotels in the Minneapolis-St. Paul area. During their stay, Mr. Schaffner again injected the girl with methamphetamine. At one point, she became frightened when her nose and toes began to turn pink. Mr. Schaffner advised the girl to take a shower to make her feel better. After she emerged from the shower, Mr. Schaffner told her to sit on a table in the bathroom; he then took a nude photograph of her with her legs spread apart. During their stay in Minnesota, Mr. Schaffner showed the photograph to a drug dealer.

Mr. Schaffner eventually drove the girl back to Wisconsin and dropped her off at a friend's house. A day and a half later, Mr. Schaffner picked the girl up and took her back to his residence. On April 21, 1997, sheriff's deputies from Dunn County, Wisconsin, discovered the girl at Mr. Schaffner's home and returned her to the foster home. One month later, an aunt of Mr. Schaffner's children discovered the nude photograph inside a heating vent in Mr. Schaffner's bathroom. The woman gave the photograph to her sister, the children's mother, who turned the photograph in to the police. Dunn County investigators later learned that Mr. Schaffner had shown the photograph to two acquaintances.

B.  Proceedings Before the District Court

On January 12, 2000, a federal grand jury returned a one-count indictment charging Mr. Schaffner with knowingly using and inducing a minor to engage in sexually explicit conduct--specifically, the lascivious exhibition of the minor's genitals and pubic area--for the purpose of visually depicting such conduct in violation of 18 U.S.C. sec. 2251(a). The indictment further charged that the visual depiction was transported in interstate commerce. Section 2251(a) is captioned "Sexual Exploitation of Children" and provides in relevant part that

[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of

producing any visual depiction of such conduct, shall be punished as provided in subsection (d) . . . if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

18 U.S.C. sec. 2251(a).

Mr. Schaffner moved to dismiss the indictment. He argued that the application of sec. 2251(a) to his conduct exceeded the constitutional authority of the federal government under the Commerce Clause. Relying upon United States v. Lopez, 514 U.S. 549 (1995),/1 Mr. Schaffner maintained that his conduct had no substantial relation to interstate commerce and that, therefore, the federal government lacked the authority to sanction him for that conduct. Mr. Schaffner acknowledged that, unlike the statute at issue in Lopez, sec. 2251(a) contained a jurisdictional hook because the statute requires that the visual depiction has actually been transported in interstate or foreign commerce. Mr. Schaffner nevertheless submitted that the mere existence of this jurisdictional hook was not enough to ensure that his conduct affected interstate commerce. Mr. Schaffner further argued that his conduct lacked a sufficient nexus to interstate commerce.

On May 5, 2000, the magistrate judge recommended that the district court deny Mr. Schaffner's motion. The magistrate judge relied in part on our decision in United States v. Bell, 70 F.3d 495, 497–98 (7th Cir. 1995), in which we rejected a Commerce Clause challenge to 18 U.S.C. sec. 922(g)(1), which prohibits possession of a firearm by a felon. In Bell, we noted that, unlike the schoolyard gun act in Lopez, sec. 922(g)(1) explicitly requires that a nexus to interstate commerce be established. See Bell, 70 F.3d at 498. In Bell, we reasoned that the "mere movement of a weapon, at some time, across state lines satisfied the commerce element of sec. 922(g)(1)." Id. We further pointed out that the absence of even such a minimal nexus to interstate commerce is what doomed the statute in Lopez. See id. The magistrate judge further noted that, in United States v. Sirois, 87 F.3d 34, 40 (2d Cir. 1996), the Court of Appeals for the Second Circuit had declined to

engraft a "commercial purpose" requirement on sec. 2251(a). Rather, held the Second Circuit, the interstate commerce nexus requirement was satisfied by Congress' decision to punish the production of sexually explicit visual depictions of minors only when transportation in interstate commerce occurred or was intended. See id. at 39. The magistrate judge concluded that, because sec. 2251(a), like sec. 922(g)(1), requires the movement of an item across state lines, the statute constitutionally could proscribe the conduct charged in the indictment.

The district court adopted the magistrate judge's findings of fact and conclusions of law and determined that Mr. Schaffner's conduct became subject to Congress' authority under sec. 2251(a) once the photograph crossed state lines. On May 15, 2000, Mr. Schaffner pleaded guilty pursuant to a written plea agreement that allowed him to appeal the district court's denial of his motion to dismiss the indictment. The district court sentenced Mr. Schaffner to 140 months' incarceration and 36 months' supervised release.

II

DISCUSSION

A.  Standard of Review

Mr. Schaffner submits that his conduct did not affect commerce among states and is thus outside the scope of Congress' Commerce Clause powers. We review rulings regarding the constitutionality of a federal statute de novo. See United States v. Wilson, 159 F.3d 280, 285 (7th Cir. 1998). However, in determining whether Congress, in exercising its power under the Commerce Clause, has acted within the bounds of its constitutional authority, we must keep in mind that congressional power under the Commerce Clause "is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution." Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 196 (1824). In determining whether Congress has stayed within the limits of that power, therefore, judicial review of congressional determinations is "limited and deferential." United States v. Black, 125 F.3d 454, 459 (7th Cir. 1997). We

need ask only whether sec. 2251(a) is a rational exercise of Congress' Commerce Clause power and whether the regulatory means chosen reasonably were adapted to the end permitted by the Constitution. See id. Nevertheless, this approach is not a toothless one. A court will not "inevitably rubber stamp all congressional statutes. It is still the province of the courts to determine whether Congress has exceeded its enumerated powers." Id. As Lopez makes clear, there are judicially enforceable outer limits on Congress' power. See Lopez, 514 U.S. at 566.

B. Lopez and the Three Approaches to Commerce Clause Analysis

   The Commerce Clause gives Congress power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, sec. 8, cl. 3. In Lopez, the Supreme Court noted that the Commerce Clause permits Congress to regulate and protect (1) the use of the channels of interstate commerce ("category one"); (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce even though the threat may come only from intrastate activities ("category two"); and (3) those activities having a substantial relation to interstate commerce ("category three"). See Lopez, 514 U.S. at 558-59. In United States v. Petersen, 236 F.3d 848, 856 (7th Cir. 2001), we pointed out that these three categories are not "methods of proof"; rather, they signal areas within Congress' power to regulate. Therefore, they ought not be considered hermetically sealed constructs designed solely for rigid application. As the Supreme Court itself has acknowledged, and our colleagues in the District of Columbia Circuit have noted, many congressional exercises of authority are justifiable under more than one of the Lopez categories./2 Indeed, in Navegar, Inc. v. United States, 192 F.3d 1050, 1055 n.2 (D.C. Cir. 1999), cert. denied, 121 S. Ct. 53 (2000), the District of Columbia Circuit pointed out that, although "the categories are useful as a synopsis of the Supreme Court's Commerce Clause jurisprudence, the attempt to fit a regulation squarely within one category can prove elusive, even fruitless." See also Black, 125 F.3d

at 461 (stating that the Child Support Recovery Act "couldconceivably fall under all three categories enumerated in Lopez").

Given the overlapping nature of the Lopez categories, we believe that we shall reach a more comprehensive appreciation of the congressional determination embodied in sec. 2251(a) if we assess the statute and the acts before us from each of the perspectives set forth in Lopez and permit those different vantage points to cast illuminating "cross-lights on one another." Niemotko v. Maryland, 340 U.S. 268, 274 (1951) (Frankfurter, J., concurring).

1. Category One: Channels of Interstate Commerce

As we noted in United States v. Kenney, 91 F.3d 884, 888 (7th Cir. 1996), Congress has, under the Commerce Power, the right to regulate the use or misuse of the channels of commerce. Congress may protect the channels of interstate commerce from immoral or injurious uses, see Lopez, 514 U.S. at 558 (citing Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 256 (1964)), and may forbid or punish the use of the channels to promote dishonesty or the spread of any evil or harm across state lines, see Brooks v. United States, 267 U.S. 432, 436 (1925). This category has been used to prevent illicit goods from traveling through the channels of commerce. See United States v. Robinson, 119 F.3d 1205, 1210 (7th Cir. 1996) (citing Heart of Atlanta, 379 U.S. at 256). Examples of activity falling within category one include the shipment of stolen goods, kidnapped persons, prostitutes and guns. See United States v. Wilson, 73 F.3d 675, 680 n.5 (7th Cir. 1996).

In Kenney, we explicitly considered the scope of Congress' authority to regulate the channels of interstate commerce and concluded that 18 U.S.C. sec. 922(o), which outlaws the transfer or possession of machine guns, did not fit comfortably within this analytical framework. See Kenney, 91 F.3d at 889. Significantly, we noted that, unlike sec. 922(o), all of the category one examples cited in Lopez contain a jurisdictional nexus element. See id. (citing 18 U.S.C. sec.sec. 2312-

2315 (interstate shipment of stolen goods); 18 U.S.C. sec. 1201 (interstate transport of kidnapping victims); United States v. Darby, 312 U.S. 100 (1941) (regulation of working conditions in the production of goods for interstate commerce)).

Notably, the application of sec. 2251(a), at issue in this case, differs from sec. 922(o) in precisely the way that we found so significant in Kenney. Unlike sec. 922(o), the activity here is tied specifically to interstate activity. The jurisdictional nexus must be established; the picture must have been transported in interstate commerce, a movement that Congress may prohibit in order to prevent the spread of injurious or immoral uses. See Lopez, 514 U.S. at 558. Through sec. 2251(a), Congress has set out to prohibit the interstate movement of a commodity through the channels of interstate commerce, see Lopez, 514 U.S. at 559, and also to protect those channels from the immoral impact of child pornography. The application of sec. 2251(a) to Mr. Schaffner's conduct achieves that permissible congressional purpose.

2. Category Two: "Things" in Interstate Commerce

The plain language of sec. 2251(a) regulates the movement of visual depictions of child pornography in interstate commerce. The Supreme Court's formulation of its three analytical categories in Lopez explicitly included within the second category the "regulation" of "things in interstate commerce," 514 U.S. at 558./3 Although some recent decisions have articulated a reluctance to include within this category the power to regulate, as opposed to protect, things in interstate commerce,/4 in Black, 125 F.3d at 460, we nevertheless held that the Child Support Recovery Act, 18 U.S.C. sec. 228, is permissible under category two because it regulates the nonpayment of interstate child support obligations, thus regulating a "thing" in interstate commerce./5

Our court has upheld, as consistent with Lopez, the prohibition of the possession of a firearm that has traveled in

interstate commerce, 18 U.S.C. sec. 922(g)(1), see Bell, 70 F.3d at 497-98,/6 and the federal carjacking statute, 18 U.S.C. sec. 2119, see United States v. Taylor, 226 F.3d 593, 600 (7th Cir. 2000). Although Bell, stressing the statute's explicit jurisdictional element, did not peg its analysis to one of the Lopez constructs, and Taylor, relying on category three, saw no necessity to discuss category two, see Taylor, 226 F.3d at 599, we later acknowledged in Petersen that both of these statutes are properly characterized as permissible exercises of Congress' Commerce Clause power under category two. See Petersen, 236 F.3d at 856. Notably, our colleagues in the Tenth Circuit also have determined that category two encompasses congressional regulation of things in interstate commerce. See United States v. Dorris, 236 F.3d 582, 586 (10th Cir. 2000), cert. denied, 121 S. Ct. 1635 (2001) (holding that sec. 922(g) is viewed best under categories one and two because it orders that the channels of interstate commerce be kept clear of firearms (category one) and addresses items sent in interstate commerce (category two)).

We believe that the symbiotic relationship of categories one and two, which the Tenth Circuit aptly perceived in its analysis of the firearms provision, also is present with respect to the provision before us today prohibiting the transportation of child pornography. Through the invocation of an explicit jurisdictional nexus, Congress has limited the scope of its regulation to the transportation of the item in interstate commerce. Thus, it has sought to prevent the spread of pornographic material depicting children by forbidding its presence in interstate commerce.

3. Category Three: Substantial Effect on Interstate Commerce

In United States v. Robertson, 514 U.S. 669, 671 (1995) (per curiam), the Supreme Court made clear that the "'affecting commerce' test was developed in our jurisprudence to define the extent of Congress' power over purely intrastate commercial activities that nonetheless have substantial interstate effects." The criminal activity at issue in this case

necessarily involves the interstate movement of the pornographic material. Therefore, this category of Lopez is not directly applicable. Nevertheless, an analysis of Lopez and its progeny is useful to a clear understanding of the congressional decision to regulate the activity at issue in this case.

In Lopez, the criminal activity did not involve any direct interstate movement. The mere possession of a firearm in a school zone comprised the completed criminal offense. Therefore, the Supreme Court dismissed the applicability of the first two analytical categories to 18 U.S.C. sec. 922(q), the statute proscribing the possession of a firearm in a school zone:

The first two categories of authority may be quickly disposed of: sec. 922(q) is not a regulation of the use of the channels of interstate commerce, nor is it an attempt to prohibit the interstate transportation of a commodity through the channels of commerce; nor can sec. 922(q) be justified as a regulation by which Congress has sought to protect an instrumentality of interstate commerce or a thing in interstate commerce.

Lopez, 514 U.S. at 559. Nor, the Court continued, did sec. 922(q) fit within the third category of allowable congressional regulation of commerce because: (1) the Act was a criminal statute that had nothing to do with interstate commerce or any kind of economic enterprise; (2) it contained no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affected interstate commerce; and (3) Congress had offered no legislative findings establishing a nexus between interstate commerce and the possession of a gun in a school zone. See id. at 559-62.

Since Lopez, the Supreme Court has employed category three to strike down one other law and limit the application of a second. See United States v. Morrison, 529 U.S. 598 (2000); Jones v. United States, 529 U.S. 848 (2000). In Morrison, the Court struck down the civil remedy provision of the Violence Against Women Act, 42 U.S.C. sec. 13981(b) ("VAWA"), on the ground that it exceeded congressional authority to regulate

interstate commerce. See Morrison, 529 U.S. at 617-18. The VAWA created civil liability for gender-based violent crime. Like the schoolyard gun act in Lopez, the VAWA did not contain a jurisdictional element tying the criminalized activity to Congress' power to regulate interstate commerce. See 42 U.S.C. sec. 13981(c); see also Morrison, 529 U.S. at 612; United States v. Taylor, 226 F.3d 593, 598 (7th Cir. 2000). In both Lopez and Morrison, the Court explained that "the noneconomic, criminal nature of the conduct at issue was central to our decision." Morrison, 529 U.S. at 610 (citing Lopez). The Court also pointed out that neither statute contained an express jurisdictional element that might limit its reach to activity that has an explicit connection with or effect on interstate commerce. See id. Both statutes criminalized activity that was not commercial in nature without including a jurisdictional element that linked the criminalized activity to interstate commerce. See Taylor, 226 F.3d at 598. The Court then provided further guidance regarding category three analysis under Lopez, posing four possible questions to help determine whether a law regulates an activity that has a substantial effect on interstate commerce: (1) whether the prohibited activity is commercial or economic in nature; (2) whether there is an express jurisdictional element involving interstate activity that might limit the statute's reach; (3) whether Congress has made findings about the effects of the prohibited conduct on interstate commerce; and (4) whether the link between the prohibited activity and the effect on interstate commerce is attenuated. See Morrison, 529 U.S. at 611-12.

The Court also used the third Lopez category to circumscribe the federal arson law, 18 U.S.C. sec. 844(i). In Jones, the Court held that 18 U.S.C. sec. 844(i), which makes it a federal crime to destroy a building used in interstate commerce or in an activity affecting interstate commerce, may not reach an owner-occupied residence not used for any commercial purpose. See Jones, 529 U.S. at 858-59. Such buildings, the Court concluded, need a more substantial connection to interstate commerce than merely using goods moved in interstate

commerce or obtaining financing from an out-of-state company to come within the statute. See id.

The photograph at issue in this case actually traveled across state lines. As in Bell, where the movement of a weapon across state lines satisfied the commerce element of the statute, the interstate movement of the photograph provides a sufficient nexus to interstate commerce. Here, as applied to Mr. Schaffner, the jurisdictional element makes federal criminal responsibility turn on the actual movement of the pornographic item in interstate commerce. In short, this case does not involve local activity that impacts interstate commerce only obliquely or not at all. Rather, the local activity comes within the ambit of the prohibition because interstate movement actually takes place. The criminal activity is inducing a minor to participate in the taking of a photograph and the photograph's movement in interstate commerce. The actual movement of the photograph across state lines directly implicates interstate commerce and the legitimate congressional concern that this evil not be spread or encouraged through the use of the channels of interstate commerce. It would have been entirely rational for Congress to have determined that material such as this does not stay in one place. Furthermore, Congress could have determined that the most effective way of curbing its spread was to sanction the producer whenever his product crossed a state line and had the opportunity to fuel the demand for such material in another locale. Because there is a rational basis for this congressional decision, we must let it stand.

Conclusion

It is undisputed that the photograph in question crossed state lines. Thus, prosecution under sec. 2251(a) in this case is a permissible exercise of Congress' authority under the Commerce Clause. Accordingly, the district court's denial of Mr. Schaffner's motion to dismiss the indictment is affirmed.

AFFIRMED

FOOTNOTES

/1 In United States v. Lopez, 514 U.S. 549 (1995), the Supreme Court struck down the Gun-Free School Zones Act, 18 U.S.C. sec. 922(q), which criminalized knowingly possessing a firearm in a school zone, because regulating such activity exceeded Congress' authority under the Commerce Clause.

/2 In Navegar, Inc. v. United States, 192 F.3d 1050, 1055 n.2 (D.C. Cir. 1999), cert. denied, 121 S. Ct. 53 (2000), the Court of Appeals for the District of Columbia Circuit noted that Lopez had cited United States v. Darby, 312 U.S. 100, 114 (1941), as a category one case, while citing Maryland v. Wirtz, 392 U.S. 183, 196 n.27 (1968), as a category three case. Wirtz involved a challenge to a 1961 amendment to the Fair Labor Standards Act that had been challenged originally in Darby.

/3 We note that the Court, at a later point in its Lopez opinion, omits the term "regulate" from its description of the second category. Lopez, 514 U.S. at 559.

/4 See United States v. Angle, 234 F.3d 326, 337 n.12. (7th Cir. 2000), cert. denied, No. 00-8951, 2001 WL 267820 (U.S. June 25, 2001); United States v. Wilson, 73 F.3d 675, 688 (7th Cir. 1996).

/5 Other circuits have agreed with United States v. Black, 125 F.3d 454 (7th Cir. 1997), that the Child Support Recovery Act is permissible under category two because it regulates things in commerce. See United States v. Williams, 121 F.3d 615, 619 (11th Cir. 1997); United States v. Crawford, 115 F.3d 1397, 1400 (8th Cir. 1997); United States v. Hampshire, 95 F.3d 999, 1003-04 (10th Cir. 1996); United States v. Mussari, 95 F.3d 787, 790-91 (9th Cir. 1996).

/6 In United States v. Bell, 70 F.3d 495 (7th Cir. 1995), we upheld sec. 922(g)(1) without engaging in a categorical analysis. Instead, we concluded merely that sec. 922(g)(1), which makes it unlawful for a felon "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm," is generally immune from constitutional attack under Lopez:

Had Mr. Bell gone to trial, the government would have been required to prove that the weapon he sold to the undercover agent had traveled in interstate commerce. In other words, to secure a conviction under sec. 922(g)(1) the government had to prove exactly what Lopez found to be missing under sec. 922(q). Because Mr. Bell entered a guilty plea, he admitted the existence of a factual basis for the requirement of a nexus with interstate com-

merce.

Bell, 70 F.3d at 498.

There have been subsequent cases from this circuit upholding sec. 922(g)(1), as well as other provisions of sec. 922, using the same, non-categorical rationale as Bell:

Sec. 922(g)(1):  United States v. Williams, 128 F.3d 1128, 1133-34 (7th Cir. 1997); United States v. Lewis, 100 F.3d 49, 51-53 (7th Cir. 1996); United States v. Bradford, 78 F.3d 1216, 1222-23 (7th Cir. 1996); and United States v. Lee, 72 F.3d 55, 58-59 (7th Cir. 1995).

Sec. 922(g)(8):  United States v. Wilson, 159 F.3d 280, 285-87 (7th Cir. 1998).

Sec. 922(g)(9):  Gillespie v. City of Indianapolis, 185 F.3d 693, 705-06 (7th Cir. 1999).

Sec. 922(u):  United States v. Hardy, 120 F.3d 76, 77-78 (7th Cir. 1997) (per curiam).