United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 26, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 02-11307

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NICHOLAS BREDIMUS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

Before GARWOOD, JONES, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Appellant Nicholas Bredimus ("Bredimus") conditionally pled guilty, expressly reserving his right to appeal, to the charge of knowingly and willfully traveling in foreign commerce for the purpose of engaging in a sexual act with a person under 18 years of age in violation of 18 U.S.C. § 2423(b). On appeal, he challenges the sufficiency of the factual basis for the guilty plea, arguing that the statute of conviction is an invalid exercise of Congressional authority under the Commerce Clause and it unconstitutionally punishes mere preparation, mere thought, and mere travel. He also contends

that the district court lacked jurisdiction to adjudicate the charge on the grounds that the offense lacked a domestic effect as required by the statute of conviction. For the following reasons, we affirm the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are not in dispute. In October 2001, Bredimus, a United States citizen, left his residence in Coppell, Texas to travel to Thailand after first stopping in Hong Kong and Tokyo. In addition to attending scheduled business meetings, while in Thailand Bredimus intended to make videotapes and digital images of Thai children engaged in sexually explicit conduct.

Upon arriving in Thailand, Bredimus contacted Pensri Suhongsa ("Suhongsa"), and hired her to accompany him to Chiang Rai Province as a procurer and interpreter. On November 3, 2001, Bredimus and Suhongsa traveled to Mai Sao in the Chiang Rai Province of Northern Thailand and obtained two rooms at the Srisamoot Hotel. Bredimus asked Suhongsa to find young boys or girls who would come to the hotel for him to photograph. That same day, Bredimus videotaped himself engaged in sexually explicit conduct with a thirteen-year-old Thai boy at the Srisamoot Hotel, and took digital images of the boy engaged in sexually explicit conduct.

Bredimus was indicted on March 5, 2002, in a six count indictment.[1] On June 4, 2002, a federal grand jury returned a superseding indictment charging Bredimus with one count of knowingly

---

[1] The original six count indictment of the appellant returned by a federal grand jury included three counts of traveling in foreign commerce with intent to engage in a sexual act with a thirteen-year-old Thai boy in violation of 18 U.S.C. § 2423(b) (Counts One to Three), one count of traveling in foreign commerce with intent to promote child pornography in violation of 18 U.S.C. § 2251A (Count Four), one count of knowingly and willfully using false documents with the knowledge that such documents contained fraudulent statements in violation of 18 U.S.C. § 1001 (Count Five), and one count of knowingly and willfully making false statements to procure a passport with the intent to induce the issuance thereof under the authority of the United States in violation of 18 U.S.C. § 1542 (Count Six).

2

traveling in foreign commerce for the purpose of engaging in a sexual act with children under 18 years of age in violation of section 2423(b)[2] and one count of traveling in foreign commerce with the intent to promote sexually explicit conduct by minors for the purpose of producing visual depictions of such conduct in violation of 18 U.S.C. §§ 2251 A(b)(2)(A) and (c)(1).[3]

On May 3, 2002, Bredimus moved to dismiss the indictment, asserting an as-applied challenge that (1) Congress exceeded its authority under the Commerce Clause, U.S. CONST. art. I, § 8, cl. 3, by enacting the two statutes under which he was charged, and (2) the district court lacked subject matter jurisdiction over an extraterritorial offense that has no effect within the United States. On July 19, 2002, the district court denied the appellant's Motion to Dismiss, finding *inter alia*, that Section 2423(b) does not exceed Congress's authority under the Commerce Clause because Congress has the authority to keep the channels of foreign commerce free from immoral or injurious uses and that banning foreign travel for an illicit purpose does not impermissibly burden a person's fundamental right to travel. The court also ruled that it had jurisdiction under Section 2423(b) on the grounds that the statute targets an activity that occurs within the United States because the foreign travel originates domestically.

---

[2] Pursuant to Section 2423(b), "[A] United States citizen . . . who travels in foreign commerce . . . for the purpose of engaging in any sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of Chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States" is guilty of an offense punishable by fine and/or not more than 15 years imprisonment. 18 U.S.C. § 2423(b).

[3] Pursuant to Section 2251A(b)(2)(A) and (c)(1), "[w]hoever . . . obtains custody or control of a minor . . . with the intent to promote . . . the engaging in of sexually explicit conduct by such minor for the purpo se of producing any visual depiction of such conduct," and "in the course of [such conduct] the minor or the actor traveled in or was transported in interstate or foreign commerce" is guilty of an offense punishable by fine and/or not less than 20 years imprisonment or for life. See 18 U.S.C. § 2251(A)(b)(2)(A) and (c)(1). For ease of reference, the court will refer to sections 2251A(b)(2)(A) and (c)(1) in this opinion simply as § 2251A.

Bredimus entered into a conditional plea agreement with the government on August 27, 2002. Bredimus pled guilty to Count Two of the original indictment, but specifically reserved his right to challenge the constitutionality of Section 2423(b) on appeal.[4]  At the arraignment hearing, Bredimus moved the court to reconsider this motion to dismiss, which the district court denied.[5]

On November 18, 2002, the district court sentenced Bredimus to 66 months in the Bureau of Prisons, a fine of $30,000.00, and conditioned supervised release for three years.  All remaining counts in the original and superseding indictment were dismissed.  Bredimus timely filed a notice of appeal.

## II. STANDARDS OF REVIEW

This court reviews a constitutional challenge to a federal statute *de novo*.  United States v. Delgado-Nunez, 295 F.3d 494, 496 (5th Cir. 2002) (quoting United States v. Brown, 250 F.3d 907, 912 (5th Cir. 2001)).  When reviewing an act of Congress passed under the authority of the Commerce Clause, we review the statute under the rational basis standard.  Groome Resources, Ltd. v. Parish of Jefferson, 234 F.3d 192, 203 (5th Cir. 2000).  The burden for the challenger is high because "federal commerce legislation continues to merit a high degree of judicial deference." United States v. Robinson, 119 F.3d 1205, 1210 (5th Cir. 1997).  In applying this deferential

---

[4] Bredimus expressly limited his right to appeal only:  (1) any punishment imposed in excess of a statutory maximum; (2) any punishment to the extent it constitutes an upward departure from the guideline range deemed most applicable by the sentencing court; (3) arithmetic errors in the guidelines calculations; (4) any appeal right reserved to the defendant under prevailing Fifth Circuit authority; and (5) any appeal based on the defendant's assertion that Section 2423(b) is unconstitutional.

[5] Bredimus's motion to reconsider the motion to dismiss included the arguments that:  (1) Section 2423(b) violates his rights under the First Amendment by seeking to regulate mere thought; and (2) Section 2423(b) violates the Privileges and Immunities Clause by impermissibly restricting Bredimus' right to travel. U.S. CONST., amend. I., art. IV, §2, cl. 1, and amend. XIV, §1.

standard, "[d]ue respect for the decisions of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a *plain showing* that Congress has exceeded its constitutional bounds." Groome Resources Ltd., L.L.C. v. Parish of Jefferson, 234 F.3d 192, 216 (2000).

Challenges to a district court's jurisdiction are reviewed *de novo*. United States v. Sims Bros. Const., Inc., 277 F.3d 734, 741 (5th Cir. 2001).

A trial court cannot accept a plea of guilty unless there is a sufficient factual basis for the plea. See Fed.R.Crim.P. 11(f); United States v. Johnson, 194 F.3d 657, 659 (5th Cir. 1999); United States v. Gobert, 139 F.3d 436, 439 (5th Cir. 1998). A district court's acceptance of a guilty plea is a factual finding which we review under the clearly erroneous standard. United States v. Angeles-Mascote, 206 F.3d 529, 530 (5th Cir. 2000).

### III.  DISCUSSION

**A. The Constitutionality of Section 2423(b)**

Under Section 2423(b), "[a] . . . United States Citizen . . . who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined [and/or] imprisoned . . . ." 18 U.S.C. § 2423(b). Bredimus argues that the statute of conviction, as applied,[6] constitutes Congress exercising a general police power in violation of United States v. Lopez, 514 U.S. 549, 131 L. Ed. 2d 626, 115 S. Ct. 1624  (1995) and United States v. Morrison, 529 U.S. 598, 146 L. Ed. 2d. 658, 120 S. Ct. 1740 (2000), and therefore, he contends that this court must inquire into whether the regulated activity "substantially affects" commerce.  Specifically, Bredimus

---

[6] We limit the scope of our review to consideration of the as-applied challenge to Section 2423(b) asserted by Bredimus.  He did not raise, and thus we do not address, whether the aforementioned statute would pass muster under a facial Commerce Clause challenge.

5

challenges the constitutionality of Section 2423(b), on the grounds that Congress exceeded its authority under the Commerce Clause, because on these facts there is no "substantial relationship" between the proscribed conduct (the crime of sexual exploitation of minors) and foreign commerce (travel by U.S. citizens abroad). Bredimus also contends that, as applied in this case, the statute unconstitutionally burdens his individual rights under the First, Fifth, and Eighth Amendments, because it punishes mere thought, mere travel, or mere preparation for a crime. We will discuss each in turn.

### 1. First Principles

Because Bredimus brings a challenge under Lopez and Morrison, we begin our analysis by briefly elucidating the "first principles" of commerce clause jurisprudence. United States v. Ho, 311 F.3d 589, 596 (5th Cir. 2002).[7] The Constitution "ensure[s] protection of our fundamental liberties." Id. Pursuant to this aim, the Framers devised a federal government of limited and enumerated powers. This constitutionally mandated division of authority appears in the Article I Vesting Clause, U.S. Const. art. I, § 1, which confers upon Congress solely "the legislative powers herein granted." The clause necessarily implies that the Framers denied Congress a "general police power," Ho, 311 F.3d at 596 (quoting, Morrison 529 U.S. at 618 and n.8), reposing such power instead in the states.

The Constitution, however, expressly granted Congress the power "to regulate Commerce with foreign Nations, and among the several States . . ." Art. I, § 8, cl. 3. Since 1937,[8] the scales

---

[7] In a previous decision, this court has discussed a more thorough and exhaustive recitation of the history of the Commerce Clause and the earlier landmark cases of Lopez and Morrison decisions relied upon by the appellant. See Ho, 311 F.3d at 596-97.

[8] Beginning in 1937, federal court jurisprudence broadly construed the scope of authority conferred upon Congress by the Commerce Clause. See NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1 (1937) (upholding the National Labor Relations Act); United States v. Darby, 312 U.S. 100

of the federal courts' Commerce Clause jurisprudence tipped more towards according to Congress "considerably greater latitude in regulating conduct [including federal criminal statutes]," See Morrison, 529 U.S. at 608, rather than to maintaining a distinction between "what is truly national and what is truly local." Id. at 617-18; Lopez, 514 U.S. at 567-68. A new era emerged with the Court's decisions in Lopez and Morrison, which clarified the legal standards applicable to a constitutional challenge under the Commerce Clause.[9] Based on those two landmark cases, it is now clear, that while courts still maintain a wide degree of deference to Congress's power to enact legislation pursuant to the Commerce Clause, such power is now subject to certain "outer limits." Lopez, 514 U.S. at 556-67; see also Ho, 311 F.3d at 596. With that in mind, we begin our analysis of the current facts.

**2. The Commerce Clause**

Our consideration of Bredimus's assertion that Congress exceeded the "outer limits" of the Commerce Clause must begin with Lopez. In Lopez, the plaintiff brought a challenge to the constitutionality of the Gun-Free School Zones Act of 1990, § 922(q)(2)(a), which made it a federal crime to have a gun within 1,000 feet of a school. The Lopez Court summarized three broad categories of activity that Congress may properly regulate under its commerce power: (1) "the use of the channels of interstate commerce," (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities,"

---

(1941) (upholding the Fair Labor Standards Act); and Wickard v. Filburn, 317 U.S. 111 (1942) (upholding the Agricultural Adjustment Act of 1938).

[9] Although the Court has taken steps recently to clarify Commerce Clause jurisprudence, it has emphasized that legal standards under the Commerce Clause "are not precise formulations, and in the nature of things they cannot be." Lopez, 514 U.S. at 567.

7

and (3) "activities having a substantial relation to interstate commerce, i.e., activities that "substantially affect interstate commerce." Lopez, 514 U.S. at 558-59. In Lopez, the Court found Section 922(q) unconstitutional because that criminal statute merely regulated firearms near schools, and thus, had no substantial effect on interstate commerce. Id. at 561. Relying upon Lopez, Bredimus contends that Congress's regulation of sexual acts with a minor under Section 2423(b) has no substantial effect on interstate commerce. We disagree.

Although this court has not addressed the constitutionality of Section 2423(b) under the Commerce Clause, other circuit courts have. In United States v. Han, 230 F.3d 560, 565 (2d Cir. 2000), the Second Circuit upheld Section 2423(b)'s constitutionality. The defendant in Han was convicted of violating the interstate commerce prong of Section 2423(b) after traveling from New Jersey to New York to engage in sexual acts with an individual he thought to be a thirteen-year-old girl, but who was in fact an undercover police officer. Id. at 562. Like Bredimus, the defendant in Han relied on the reasoning of Lopez and claimed that the statute was invalid because the regulated activity did not "substantially affect" interstate commerce. Id. The Second Circuit in Han rejected the defendant's claim, distinguishing Lopez on the grounds that "Lopez dealt exclusively with the third category. . . ." in contrast "[Section] 2423(b) deals with the use of the channels of interstate commerce." Id.; see also United States v. Brockdorff, 992 F.Supp. 22, 24, n.3 (D. D.C. 1997) (stating that Section 2423(b) presents a "channels of commerce" issue rather than a Lopez "affecting commerce" issue). We find no reason to generally disagree with Han, and therefore, we reject Bredimus's contention that we should inquire into whether the regulated activity "substantially affects" foreign commerce.

Bredimus argues, in the alternative, that even assuming that Section 2423(b) generally presents a "channels of commerce" issue, a substantial affect analysis may still be appropriate. Essentially, Bredimus argues that the Lopez categories should be viewed as fluid rather than "hermetically sealed constructs designed solely for rigid application." United States v. Shaffner, 258 F.3d 675, 679 (7th Cir. 2001). The Supreme Court and other lower federal courts have found that these three bases of congressional authority are in fact analytically distinct. United States v. Robertson, 514 U.S. 669 (1995); see also United States v. Pappadopoulos, 64 F.3d 522 (9th Cir. 1995); Brockdorff, 992 F.Supp. at 24 n.3. In Robertson, the Supreme Court concluded that transporting equipment and workers from out-of-state into Alaska to further an illegal mining operation was interstate commerce activity subject to congressional regulation without regard to the "affecting commerce" test. Id. As stated by the Court, "[t]he 'affecting commerce' test was developed in our jurisprudence to define the extent of Congress's power over purely *intra*state commercial activities that nonetheless have substantial *inter*state affects." Id. at 671 (emphasis in original). Furthermore, in Shaffner, the Seventh Circuit found that although the "[Lopez] categories are useful as a synopsis of the Court's Commerce Clause jurisprudence, the attempt to fit a regulation *within one category* can prove elusive, even fruitless." 258 F.3d at 679 (emphasis added). Interpreted in this light, Shaffner highlights the potential for certain cases to fall into several Lopez categories rather than focusing, as Bredimus urges us to do, on the lack of distinctiveness of the categories themselves. Id. at 679. Therefore, we reject Bredimus's reading of the Lopez categories. Our determination comports with the treatment by other courts of Commerce Clause challenges to statutes analogous to the one at issue today.

This court notes that other circuits have found statutes similar to Section 2423(b) — 18 U.S.C. § 2262(a) and 18 U.S.C. § 2261 — to be valid exercises of Congress's Commerce Clause authority. For example, courts have rejected Commerce Clause challenges to the Violence Against Women Act of 1994, § 2262(a)(1), which criminalizes crossing a state line with the intent to violate a protection order and then violating it, because that statute criminalizes only "those violations of protection orders that involve the use of interstate commerce." Han, 230 F.3d at 563; See also United States v. Von Foelkel, 136 F.3d 339, 341 (2d Cir. 1998) (upholding § 2262 (a)(1) as it falls within Lopez's first category) ; United States v. Bailey, 112 F.3d 758, 766 (4th Cir.), cert. denied, 139 L.Ed. 2d. 170, 118 S. Ct. 240 (1997); United States v. Wright, 128 F.3d 1274, 1276 (8th Cir. 1997) (upholding § 2262 (a)(1) as it "falls within Congress's authority to keep the channels of interstate commerce free from immoral and injurious uses.") (quotations omitted).

Similarly, courts have upheld, under the Commerce Clause, the constitutionality of 18 U.S.C. § 2261, which provides: "A person who travels across a State line . . . with the intent to injure, harass, or intimidate that person's spouse or intimate partner, and who, in the course of or as a result of such travel, intentionally commits a crime of violence and thereby causes bodily injury to such spouse or intimate partner, shall be punished . . . ." Han, 230 F.3d at 563; see also United States v. Gluzman, 154 F.3d 49, 50 (2d Cir. 1998); United States v. Lankford, 196 F.3d 563 (5th Cir. 1999) (finding that because § 2261(a)(1) is a regulation of the use of channels of interstate commerce, the court "need not address whether domestic violence 'substantially affects' interstate commerce"); United States v. Paige, 167 F.3d 325, 334 (6th Cir. 1999) ("Because the triggering factor of § 2261(a)(2) is the movement of the victim across state lines, this statute falls into the first category and is a valid exercise of Congress's power to regulate the use of the channels of interstate commerce.").

10

In upholding the constitutionality of Sections 2262(a)(1) and 2261, the previously mentioned cases generally refer to Congress's ability to regulate morality under the Commerce Clause. In Caminetti v. United States, the Court held that the Mann Act, which prohibits the transportation of women in commerce for immoral purposes, was a valid exercise of Congress's commerce power. 242 U.S. 479 (1917). In that decision, the Court clearly stated that "to keep the channels of commerce free from immoral and injurious uses has been frequently sustained, and is no longer open to question." Id. at 491. Pursuant to this aim, the Court has long held that Congress has plenary power to reach and punish the movement in interstate commerce of those who seek to accomplish unlawful purposes:

> We have said that the liberty protected by the Constitution embraces the right to be free in the enjoyment of one's faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood of avocation . . . . But surely it will not be said to be part of any one's liberty . . . to enter into commerce . . . an element that will be confessedly injurious to the public morals.

Lottery Case, 188 U.S. 321, 356-57 (1903).

We acknowledge that unlike Section 2423(b), which criminalizes crossing state (or international) lines with a criminal intent, without requiring the commitment of any further criminal act, the aforementioned statutes, Sections 2262(a)(1) and 2261, require both crossing borders with criminal intent and the commission of an unlawful act thereafter. However, we do not find that distinction dispositive here. Courts have also upheld a murder-for-hire statute, 18 U.S.C. § 1958, which, like Section 2423(b), does not require the commission of a further act. Section 1958 requires only that the government prove the defendant traveled in interstate or foreign commerce with the intent that a murder be committed for hire. United States v. Delpit, 94 F.3d 1134, 1149 (8th Cir.

11

1996); see also United States v. Degan, 229 F.3d 553, 556 (6th Cir. 2000) (rejecting defendant's claim of no nexus between interstate commerce and crime and upholding the constitutionality of Section 2423(b) on the basis of the sufficiency of the evidence). Like Section 2423(b), under section 1958, once the commerce facility has been used with the required intent, the crime is complete. Bredimus points out that these courts did not specifically conduct a Commerce Clause analysis as part of their decision-making process. While acknowledging his argument, we still find the holdings of these cases persuasive, however, because the statute itself was upheld in both instances pursuant to Congress's Commerce Clause authority. Delpit, 94 F.3d at 1149; Degas, 229 F.3d at 56.

We find no reason to disagree with the aforementioned precedent as applied here. Quite the contrary, we find the deference accorded to Congress under Section 2423(b) even more compelling when, as here, the commerce at issue is foreign, as opposed to interstate. The Supreme Court has long held that Congress's authority to regulate foreign commerce is even broader than its authority to regulate interstate commerce. Japan Line, Ltd. v. Los Angeles County, 441 U.S. 434, 448 (1979). In comparison with the Han court's deference to Congress pursuant to Section 2423(b), under which Congress regulated merely interstate commerce, such deference applies even more forcefully to cases involving foreign commerce travel. Thus, on the facts presented, a court should allow Congress greater deference in regulating the channels of foreign commerce.[10]

After examining the reasoning and holdings of other cases upholding the constitutionality of Section 2423(b) and similar statutes, the defendant's Commerce Clause challenge should fail.

---

[10] We note that where congressional regulation of foreign commerce is involved, not only is there the necessity that the nation speak with one voice, in matters potentially affecting international relations, but also there is not the counter veiling concern of a federal invasion of the general police power of the states that is so extensive as to obliterate the distinction between national and local concerns and create a completely centralized government.

**3. Mere Preparation for an Offense, Mere Thought, or Mere Travel**

Bredimus argues that he cannot constitutionally be charged under Section 2423(b) for doing nothing more than traveling to another country with the intent prohibited by that section. He claims that because the statute does not require proof of any additional acts by the defendant, it fails to establish a connection between the defendant's travel and his intent, and therefore punishes "mere thought," "mere travel," and "mere preparation," in violation of his rights under the First, Fifth, and Eight Amendments. We disagree.

In Gamache, 156 F.3d 1, 8 (1st Cir. 1998), the First Circuit upheld the constitutionality of Section 2423(b), as applied, even though the defendant argued that the statute penalized him for "mere thought." (finding that the statute punishes acts and not mere abstractions because "the appellant did not merely sit in the quiet of his house, contemplate evil thoughts, and then flip the channels of his television set, and continue blithely with other musings"). The court held that the statute does not punish thought alone, because at least one act must occur: crossing a state line. Id. Similarly, in Han, the Second Circuit rejected the defendant's First Amendment challenge that Section 2423(b) was unconstitutionally applied to him because it criminalized mere thought. Han, 230 F.3d at 563. The Second Circuit in Han reasoned that crossing state lines may be "sufficient to elevate [the defendant's] thoughts to an intention to commit the charged act." Id.

Consistent with our fellow circuits, therefore, we find that Section 2423(b) does not prohibit mere thought or mere preparation because it requires as an element that the offender actually travel in foreign commerce. As in Gomache and Han, the substantive criminal act at issue here is not, as Bredimus claims, a sexual act with a juvenile. See Gomache, 156 F.3d at 8; Han, 230 F.3d at 563. Instead, Section 2423(b) punishes the travel with the intent to commit such an act itself. Id. We find

13

Bredimus's travel to a foreign country from a domestic origin sufficient to elevate his thoughts to an intention to commit the charged act. Section 2423(b) does not punish mere thought, because Bredimus admits to the act of crossing a national border. Thus, Bredimus's claim that Section 2423(b) punishes mere thought and lacks a meaningful *actus reas* is invalid.

We also address Bredimus's contention that Gamache and Han should be distinguished from his case. Bredimus contends that in Gamache and Han the courts relied heavily on evidence that the defendants before them had actually engaged in acts beyond mere thought. The defendant in Gomache engaged in extensive correspondence that eventually led to his trip, purchased supplies, and transported the supplies in his vehicle. Gomache, 156 F.3d at 8. In Han, the defendant "engaged in acts beyond mere thinking, evidenced by his telephonic communications in which he developed a plan and articulated a purpose to cross interstate lines to engage in sexual acts." Han, 230 F.3d at 563.[11] In this light, Bredimus is correct that the record on appeal does not present any evidence of preparatory acts committed by him prior to his departure from Dallas to the Far East.

Under the circumstances presented in this case, however, we find that evidence of preparatory acts are not required. The need for evidence of preparatory acts is obviated by Bredimus's guilty plea, in which he admits to having formed the intent to engage in illicit sexual acts with a minor prior

---

[11] We also acknowledge that the courts in both Gomache and Han noted that the issue raised in the case *sub judice* had not yet been decided:

> It is unnecessary to decide here, and thus it is not held, that a mere thought of engaging in a sexual act with [a minor], where coupled with crossing a state line, constitutes a prohibited act, and thus, a violation of § 2423(b). Nor is it held that, if thus construed, § 2423(b) would pass constitutional muster. These questions can be considered when raised where the facts are so limited.

Han, 230 F.3d at 563; see also Gomache, 156 F.3d at 8.

14

to traveling in foreign commerce. Admittedly, had Bredimus not pleaded guilty, the lack of preparatory acts would have increased the government's difficulty in proving beyond a reasonable doubt that he had the requisite intent at the time he traveled. Difficulty of proof, however, "is not a valid criteria for determining the constitutionality of the present statute." Gomache, 156 F.3d at 8. Thus, because Bredimus pled guilty to the requisite intent under Section 2423(b), and expressly admitted his intent in the factual resume supporting his guilty plea which he and his attorney signed, on these facts, we need not inquire into evidence of preparatory acts. Therefore, we reject Bredimus's claim that Section 2423(b) criminalizes mere thought or mere preparation, and find that the First and Eighth Amendments do not prevent the criminalization of the conduct here.

Bredimus also claims that the right to travel cannot be criminalized merely because the travel is undertaken simultaneously with a defendant intending to commit an offense. He contends that Section 2423(b) is unconstitutional because it imposes a burden on exercising the right to travel by a citizen whose right to travel has not been qualified in any way, in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments. We are not persuaded. We agree that the right to travel is a fundamental right[12] and that a government infringement on that right will be subject to strict scrutiny. See Shapiro v. Thompson, 394 U.S. 618 (1969). While the right to travel is well-established, no federal court has ever held that an individual has a fundamental right to travel for an

---

[12] We must distinguish between the right to travel generally versus the right to travel in foreign commerce. Although the freedom to travel in foreign commerce is a liberty interest recognized under the Fifth Amendment, Kent v. Dulles, 357 U.S. 116, 127 (1958) ("Freedom to travel abroad is, indeed, an important aspect of the citizen's liberty"), it clearly is accorded less stature than the right to travel interstate. Haig v. Agee, 453 U.S. 280, 306 (1981) ("The Court has made it plain that the freedom to travel outside the United States must be distinguished from the right to travel within the United States."). Courts usually grant great deference to restrictions on foreign travel. Califano v. Aznavorian, 439 U.S. 170, 177 (1978) (stating that legislation infringing on foreign travel was "not to be judged by the same standards applied to laws that penalized the right to interstate travel").

15

illicit purpose. See Hoke v. United States, 227 U.S. 308, 320-23 (1913); United States v. Burton, 475 F.2d 469, 471 (8th Cir. 1973). Because this statute, as relevant here, only criminalizes foreign travel when the travel is done with an illicit intent, we find that Section 2423(b) does not impermissibly burden the fundamental right to travel.

The statute of conviction, therefore, is not unconstitutional as applied to Bredimus. Section 2423(b) only prohibits actual travel with an illicit intent, not just the travel itself. For the aforementioned reasons, we find this statute constitutional because it punishes more than mere thought, mere travel, or mere preparation for a crime.

**B. Jurisdiction of the District Court**

Bredimus submits that the district court lacked jurisdiction to punish him for his extraterritorial actions because those actions lacked a domestic effect. In support of this contention, he relies on Strassheim v. Daily, in which a defendant was punished for his extraterritorial acts based on the court's holding that prohibited conduct occurring in one state could be punished in another. 221 U.S. 280 (1911). Bredimus's claim, however, is based on the erroneous notion that Section 2423(b) punishes extraterritorial acts. Section 2423(b) contains an explicit jurisdictional element: once a United States citizen has traveled in foreign commerce, a federal court has jurisdiction because the crime is complete once foreign travel occurs with the illicit intent. Gamache, 156 F.3d at 8 (stating that the phrase "traveling in interstate commerce" supplies both the jurisdictional basis and the objective act that facilitates the proof of intent). We find therefore, that the criminal act under § 2423(b) is foreign travel with criminal intent; and thus, the offense is complete even if the illicit intent is never realized. United States v. Hersh, 297 F.3d 1233, 1245-46 (11th Cir. 2002) (stating that a violation of Section 2423(b) does not require that the government prove that the criminal act

16

occurred in a foreign country, merely the defendant "had formed the intent to engage in sexual activity with a minor when he crossed state lines . . . ."). Bredimus's criminal act was not the sexual exploitation of children in Thailand, but rather the foreign travel with an illicit intent. Therefore, the district court correctly asserted jurisdiction, because the prohibited conduct in this case occurred within the United States.

**C. Sufficiency of the Factual Basis**

Bredimus claims that, based on his previous arguments, the factual basis for his plea is insufficient. He contends that if Section 2423(b) is unconstitutional because Congress lacked the authority to enact it under the Commerce Clause, or the district court lacked jurisdiction because the offense had no domestic effect, then a sufficient factual basis for his guilty plea was lacking as a matter of law. Because those claims were previously addressed and dismissed, we find no merit in, and thus, we decline to address, the appellant's challenge to the sufficiency of the factual basis.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM Bredimus's conviction and sentence in all respects. AFFIRMED.