UNITED STATES of America,
Plaintiff,

v.

Michael Lewis CLARK, Defendant.

No. CR03–0406L.

United States District Court,
W.D. Washington,
At Seattle.

April 26, 2004.

1128

Susan Blair Dohrmann, U.S. Attorney's Office, John Joseph Lulejian, U.S. Attorney's Office, Seattle, WA, for USA, Plaintiff.

Michael Filipovic, Federal Public Defender's Office (Sea), Seattle, WA, for Michael Lewis Clark, Defendant.

## ORDER DENYING MOTION TO DISMISS

LASNIK, District Judge.

### I. INTRODUCTION

This matter comes before the Court on a motion to dismiss (Dkt.# 44) filed by defendant Michael Lewis Clark ("Clark"). For the reasons set forth in this Order, the Court denies Clark's motion.

## II. DISCUSSION

### A. Background.

On June 28, 2003, Clark, a United States citizen, was arrested by Cambodian National Police in Phnom Penh, Cambodia, on charges of debauchery for engaging in sexual contact with two Cambodian boys. Prior to his arrest, Clark had lived in Cambodia for approximately five years, periodically returning to the United States for family visits. Following a family visit in April of 2003, Clark left the United States aboard a United States military flight that departed from Seattle, Washington, on May 1, 2003. Clark traveled through Japan, Singapore, Malaysia and Thailand before returning to Cambodia.

While Clark was detained in Cambodia, the United States arranged to take jurisdiction over the offense from Cambodia. Following his expulsion from Cambodia, on September 24, 2003, Clark was indicted with two counts of violation of 18 U.S.C. § 2423(c), which criminalizes the illicit sexual conduct of United States citizens or admitted aliens who travel in foreign commerce. On March 17, 2004, Clark pled guilty to those charges and reserved the right to challenge the legality of that statute.

Clark challenges the statute as unconstitutional for lack of congressional authority under the Commerce Clause. Additionally, Clark contends that under principles of statutory construction the statute should not be read to apply to him. Clark also argues that the statute violates principles of international law and that its extraterritorial application is unreasonable and unconstitutional under the Due Process Clause of the Fifth Amendment.

### B. Analysis.

A court should exercise caution and reluctance before striking down a statute as unconstitutional. *See Parker v. Levy,* 417 U.S. 733, 760, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (courts must be "reluctant[ ] to strike down a statute on its face where there [are] a substantial number of situations to which it might validly be applied"); *Nader 2000 Primary Comm., Inc. v. Hazeltine,* 110 F.Supp.2d 1201, 1206 (D.S.D. 2000) ("A court should inquire into the constitutionality of a statute only if such inquiry is essential to the protection of the rights of one of the parties."). The Court therefore turns to those arguments that do not implicate the Constitution before considering Clark's constitutional challenges to the statute.

### 1. The Statute.

18 U.S.C. § 2423(c) provides:

Any United States citizen or alien admitted for permanent residence who travels in foreign commerce, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

"Illicit sexual contact" is defined as:

(1) a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States; or (2) any commercial sex act (as defined in section 1591) with a person under 18 years of age.

18 U.S.C. § 2423(f). This statute was enacted as part of the "Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act" (the "PROTECT Act"). *See* Pub.L. No. 108–21, 117 Stat. 650 (2003). Prior to enactment of 18 U.S.C. § 2423(c), the Violent Crime Control and Law Enforcement Act of 1994 criminalized travel to foreign countries *for the purpose* of engaging in sexual acts with a child under the age of

18 if such acts would be in violation of federal law. *See* 18 U.S.C. § 2423(b).[1]

The provisions of 18 U.S.C. § 2423(c) are very similar to legislation passed by the House of Representatives in 2002, but which failed to pass in the Senate. *See* H.R. Conf. Rep. No. 108–66, at 5, 2003 U.S.C.C.A.N. 683 (section "is similar to H.R. 4477, the 'Sex Tourism Prohibition Improvement Act of 2002,' which passed the House on June 26, 2002"). The House Report on that prior legislation stated that the purpose of the bill was to remove the requirement that the "Government . . . prove that the defendant traveled 'for the purpose' of engaging in the illegal activity." H.R.Rep. No. 107–525, at 2 (2002). The House Report further noted that the "legislation will close significant loopholes in the law that persons who travel to foreign countries seeking sex with children are currently using to their advantage in order to avoid prosecution." *Id.* at 3.

### 2. Statutory Construction Argument.

Clark contends that the application of two principles of statutory construction mandates that the charges against him be dismissed:

First, "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by other of which such questions are avoided, [the Court's] duty is to adopt the latter." *United States v. Delaware & Hudson Co.,* 213 U.S. 366, 408, 29 S.Ct. 527, 53 L.Ed. 836 (1909); *see also Jones v. United States,* 529 U.S. 848, 857, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000). . . . Second, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Jones,* 529 U.S. at 858, 120 S.Ct. 1904. (Motion at 22). Clark contends that because the PROTECT Act refers to the legislation as "penalties against sex tourism" and because the prior legislation upon which the statute was modeled was entitled "Sex Tourism Prohibition Improvement Act of 2002," the statute should not apply to him because he is not a "sex tourist." (Motion at 23 (citing H.R. Conf. Rep. No. 108–66, at 5, 2003 U.S.C.C.A.N. 683)).

▋ Clark is attempting to add elements to the crime with which he is charged (and to which he pled guilty) that simply do not exist in the statute. Clark is within the class of persons whose conduct Congress intended to criminalize by enacting 18 U.S.C. § 2423(c).[2] No principles of

1. Prior to enactment of the PROTECT Act, subsection (b) of 18 U.S.C. § 2423 provided as follows:

 A person who travels in interstate commerce, or conspires to do so, or a United States citizen or alien admitted for permanent residence in the United States who travels in foreign commerce, or conspires to do so, for the purpose of engaging in any sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States shall be fined under this title, imprisoned not more than 15 years, or both.

 Section 105 of the PROTECT Act struck this section and inserted sections (b) through (g). Section (b) now provides:

 A person who travels in interstate commerce or travels into the United States, or a United States citizen or alien admitted for permanent residence in the United States who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

2. The parties disagree regarding the permanence or lack of permanence of Clark's residence in Cambodia. Even assuming that the evidence Clark contends would be proven at an evidentiary hearing regarding his permanent attachment to Cambodia were proven to be true, the Court would find that Clark falls within the class of persons whose conduct Congress intended to criminalize under 18 U.S.C. § 2423(c). *See* Reply at 13; Clark Decl.; Love Decl. Exs. A–D. The Court therefore finds there to be no need to conduct an evidentiary hearing.

statutory construction cause this Court to construe the statute such that it does not apply to Clark.

### 3. Violation of International Law Argument.

Clark contends that this Court should not exercise jurisdiction over this matter because his prosecution would violate principles of international law and would be unreasonable under international law.

### a. Principles of International Law Regarding Extraterritorial Application of a Federal Statute.

 When "determining whether a statute applies extraterritorially, [courts] presume that Congress did not intend to violate principles of international law." *McCulloch v. Sociedad Nacional de Marineros de Honduras,* 372 U.S. 10, 21–22, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963). "In the absence of an explicit Congressional directive, courts do not give extraterritorial effect to any statute that violates principles of international law." *United States v. Vasquez–Velasco,* 15 F.3d 833, 839 (9th Cir.1994).

International law recognizes several principles under which the exercise of extraterritorial jurisdiction may be appropriate, including (1) the objective territorial principle, under which jurisdiction is asserted over acts performed outside the United States that produce detrimental effects in the United States; (2) the protective principle, under which jurisdiction is asserted over foreigners for acts committed outside the United States that may impinge on the territorial integrity, securi-

ty, or political independence of the United States; (3) the nationality principle, under which jurisdiction is based on the nationality or national character of the offender; (4) the universality principle, which provides jurisdiction over extraterritorial acts for crimes so heinous as to be universally condemned; and (5) the passive personality principle, under which jurisdiction is based upon the nationality of the victim. *Id.* at 840 n. 5 (citing *Restatement (Third) of Foreign Relations of Law of the United States* § 402 cmt. a (1987)).

Clark used American sources of financing to live in Cambodia. Additionally, Clark frequently utilized military benefits to fly between Asia and the United States. Clark maintained his citizenship, and "[a]long with the many benefits that American citizenship confers upon those who hold it, come certain 'obligations of citizenship' [including] the obligation to obey laws that specifically apply to one's conduct." *United States v. Shahani–Jahromi,* 286 F.Supp.2d 723, 730 (E.D.Va.2003). Furthermore, although the Court acknowledges that certain nations have not yet done nearly enough to ensure that their child citizens are protected from sexual abuse by other citizens or by foreign travelers, the Court finds that the sexual abuse of children criminalized by this statute is universally condemned. The Court therefore finds that Congress may exercise extraterritorial jurisdiction over the acts criminalized by 18 U.S.C. § 2423(c) under both the nationality principle and the universality principle.[3]

---

**3.** Clark notes that in *United States v. Yousef,* 327 F.3d 56 (2d Cir.2003), the Second Circuit Court of Appeals found that the district court had erred in partially grounding jurisdiction over a count relating to plans to bomb an airplane not registered in the United States on the universality principle because there is no international consensus regarding terrorism.

However, the court's conclusion that terrorism does not provide a basis for universal jurisdiction was based in large part on the absence of universal agreement regarding the definition of "terrorism." *See Yousef,* 327 F.3d at 106–08 n. 41. Criminalization of the conduct at issue here does not present the same absence of universal condemnation.

#### b. Reasonableness.

■ Even if principles of international law serve as bases for extraterritorial application of a law, international law also requires that such application of the law be reasonable. *Vasquez–Velasco*, 15 F.3d at 840. Several factors may be considered in the reasonableness determination:

(a) the link of the activity to the territory of the regulating state, *i.e.*, the extent to which the activity takes place within the territory, or has substantial, direct, and foreseeable effect upon or in the territory;

(b) the connections, such as nationality, residence, or economic activity, between the regulating state and the person principally responsible for the activity to be regulated, or between that state and those whom the regulation is designed to protect;

(c) the character of the activity to be regulated, the importance of regulation to the regulating state, the extent to which other states regulate such activities, and the degree to which the desirability of such regulation is generally accepted;

(d) the existence of justified expectations that might be protected or hurt by the regulation;

(e) the importance of the regulation to the international political, legal, or economic system;

(f) the extent to which the regulation is consistent with the traditions of the international system;

(g) the extent to which another state may have an interest in regulating the activity; and

(h) the likelihood of conflict with regulation by another state.

*Id.* at 840 n. 6 (quoting *Restatement (Third) of Foreign Relations of Law of the United States* § 403(2)). Although there is only a minimal link between the activity

sought to be regulated by this statute and the territory of the United States, several of the other factors favor a finding of reasonableness here. There is a strong connection between the United States and its citizens (and resident aliens) who commit the illicit activity. The prohibition against sexual activity with young children is considered desirable and is widely accepted. There is very little likelihood of conflict with regulation by other states. For all of these reasons, the Court finds that the extraterritorial application of this statute is reasonable under international law.

#### 4. Due Process Argument.

■ That the extrajudicial application of a criminal statute comports with international law does not "conclusively determine whether due process is satisfied." *United States v. Davis*, 905 F.2d 245, 249 n. 2 (9th Cir.1990). Rather, the Due Process Clause of the Fifth Amendment requires that the Government show a "sufficient nexus" between the defendant or the conduct condemned and the United States such that the extraterritorial application of the statute would not be arbitrary or fundamentally unfair. *Id.* at 248–49; *United States v. Medjuck*, 156 F.3d 916, 918 (9th Cir.1998). This "nexus" requirement "serves the same purpose as the 'minimum contacts test' in personal jurisdiction. It ensures that a United States court will assert jurisdiction only over a defendant who should reasonably anticipate being haled into court in this country." *United States v. Klimavicius–Viloria*, 144 F.3d 1249, 1257 (9th Cir.1998).

Clark contends that an American citizen or resident alien could not reasonably anticipate being haled into court in this country for the conduct covered by the statute. (Motion at 28). Additionally, Clark argues that no nexus exists between a crime against a foreign national and the United

States. Clark is correct that a crime against a foreign national alone does not create a sufficient nexus with the United States. However, when that crime is committed by an American citizen or resident alien, the Court finds that a sufficient nexus exists. As noted by the Government, eradication of trafficking in and exploitation of sex workers, particularly when the victims are children, is a foreign policy, law enforcement, and public health policy priority for the United States Government. *See* Response Ex. C (President George W. Bush, United Nations Address (Sept. 23, 2003)); Response Ex. E at 2 (comments of Secretary of State Colin Powell regarding public health consequences of sex trade). For the same reason the Court finds that an American citizen or resident alien could reasonably anticipate being haled into Court in the United States for illicit sexual conduct with a child in a foreign country. The Court therefore finds that the extraterritorial application of this statute does not violate the Due Process Clause of the Fifth Amendment.

### 5. Congressional Authority to Regulate Channels of Foreign Commerce.

 "The Constitution ... withhold[s] from Congress a plenary police power that would authorize enactment of every type of legislation." *United States v. Lopez,* 514 U.S. 549, 566, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Therefore Congress may enact legislation only when the exercise of such congressional power is authorized by the Constitution.

 The Constitution grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. 1, § 8, cl. 3. "Foreign commerce" is defined to include "commerce with a foreign country." 18 U.S.C. § 10. Courts have interpreted this term to include commerce or travel between the United States and other countries. *See, e.g., United States v. Montford,* 27 F.3d 137, 139–40 (5th Cir.1994). Congress may regulate three categories of activity under the Commerce Clause: (1) the use of the channels of interstate or foreign commerce, (2) the instrumentalities of interstate or foreign commerce or persons or things in interstate or foreign commerce, and (3) activities that have a substantial relation to interstate or foreign commerce.[4] *Lopez,* 514 U.S. at 558–59, 115 S.Ct. 1624. Congress possesses broader power to regulate foreign commerce than interstate commerce. *See Japan Line, Ltd. v. County of Los Angeles,* 441 U.S. 434, 448, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979) ("Foreign commerce is preeminently a matter of national concern[, and] there is evidence that the Founders intended the scope of the foreign commerce power to be ... greater" than the scope of interstate commerce power.).

The parties agree, as does the Court, that the statute at issue here constitutes a congressional attempt to regulate the use of "channels of commerce."[5] *See* Motion

---

4. Although *Lopez* involved interstate commerce, the categories of activities Congress may regulate under its commerce power are the same. *United States v. Cummings,* 281 F.3d 1046, 1049 n. 1 (9th Cir.2002).

5. Although at oral argument the Government stated that the channels of commerce category is the "best" by which to evaluate this statute, the Government contends that this statute also constitutes regulation of activities that substantially affect foreign commerce. Because the Court finds that this statute falls within Congress's authority to regulate the "channels of foreign commerce," the Court need not resolve whether the statute is a permissible exercise of congressional authority under the other two categories of activity that may be regulated pursuant to the Commerce Clause.

at 16; Response at 6–8. "Channels of commerce" regulation addresses "misuse" of the channels of interstate or foreign commerce. *Perez v. United States,* 402 U.S. 146, 150, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971). Clark contends that Congress lacks authority under the Commerce Clause to regulate the charged activity because 18 U.S.C. § 2423(c) does not address the wrongful use of or interference with a channel of commerce. (Motion at 19).

The Government cites opinions in which courts have upheld the constitutionality of 18 U.S.C. § 2423(b) as a valid use of congressional power under the Commerce Clause. *See* Response at 6–7 (citing *United States v. Bredimus,* 352 F.3d 200 (5th Cir.2003); *United States v. Han,* 230 F.3d 560, 563 (2d Cir.2000)). However, 18 U.S.C. § 2423(b) is very different from 18 U.S.C. § 2423(c). As noted above, Section 2423(c) eliminated the requirement that a defendant "travel[ ] in foreign commerce, *for the purpose of engaging in any illicit sexual conduct.*" 18 U.S.C. § 2423(b) (emphasis added).

The Government contends that courts have upheld other statutes similar to 18 U.S.C. § 2423(c) on the basis of congressional authority to regulate the channels of foreign commerce. *See* Response at 8. The Government cites *United States v. Cummings,* 281 F.3d 1046 (9th Cir.2002), in which the Ninth Circuit upheld the constitutionality of the International Parental Kidnaping Crime Act ("IPKCA").

The IPKCA criminalizes the actions of one who "removes a child from the United States or retains a child (who has been in the United States) outside the United States with intent to obstruct the lawful exercise of parental rights." 18 U.S.C. § 1204(a). In *Cummings,* the defendant had removed two of his children from the United States to Germany via a commercial airline. The defendant argued that the statute exceeded congressional authority because "once the movement ceases, the channels of commerce are no longer affected." *Cummings,* 281 F.3d at 1049–50. The court rejected Cummings' argument: "The cessation of movement does not preclude Congress's reach if the person or goods traveled in the channels of foreign commerce." *Id.* at 1050. The *Cummings* Court also found that the IPKCA's criminalization of the retention of children in a foreign country with intent to obstruct the lawful exercise of parental rights constituted a permissible exercise of congressional authority to regulate the channels of commerce:

> If a child is wrongfully retained in a foreign country, he or she cannot freely use the channels of commerce to return. Congress has authority to prevent individuals from impeding commerce ... and, as to those who "retain" children outside of the United States, to prevent them from traveling back to this country via the channels of commerce. Thus, by wrongfully retaining his children in Germany, Cummings is interfering with the use of channels of foreign commerce; IPKCA removes an impediment to travel and makes possible unrestricted use of the channels of commerce.

*Id.* (citations omitted).

Clark contends that Congress's ability to criminalize the conduct covered by the IPKCA under channels of commerce authority was based upon the wrongful use or interference with the use of foreign channels of commerce. (Motion at 19 n. 7; Reply at 6). Clark cites *United States v. Shahani–Jahromi,* 286 F.Supp.2d 723 (E.D.Va.2003), in support of this argument. In *Shahani–Jahromi,* the court declined to find that the defendant had wrongfully used foreign channels of commerce:

> In reaching the conclusion that the IPK-CA thus regulates the channels of com-

merce, the Ninth Circuit appears to have assumed that wrongful retention is necessarily preceded by wrongful removal, as was indeed the case in *Cummings*. In this case, however, the child was not wrongfully removed, but rather was taken voluntarily to Iran by her mother. Therefore the channels of commerce were not wrongfully used in removing her from the United States as in *Cummings*.

*Shahani–Jahromi*, 286 F.Supp.2d at 733. The *Shahani–Jahromi* Court upheld the IPKCA on the basis that the father's retention of his daughter in Iran prevented his daughter from using the channels of foreign commerce to return. *Id.* at 734 ("By keeping the child outside the United States, her ability to use the channels of international commerce to re-enter the United States is impeded.").

Clark contends that, unlike the statutes upheld in *Bredimus, Han, Cummings,* and *Shahani–Jahromi*, 18 U.S.C. § 2423(c) is directed at conduct that does not involve the active misuse or wrongful prevention of use of channels of commerce:

> [S]ection 2423(c) is directed at conduct that occurs after the cessation of movement. Yet, unlike *Cummings*, it does not involve the prior transportation of a protected class of persons (*e.g.*, trafficked children) nor does it involve the misuse of the channels of commerce (traveling with intent to have prohibited sex with minors or having prohibited sex with minors during the foreign travel), or any impediment to the use of channels of foreign commerce (retaining an American child in a foreign country and forcing that child into prostitution in a foreign country).

(Reply at 6). Clark is correct that in all of the opinions discussed above, each court observed that the defendant wrongfully used channels of foreign commerce or wrongfully prevented the use of such channels. However, *Bredimus, Han, Cummings*, and *Shahani–Jahromi* do not establish the outer limit of congressional authority to regulate channels of foreign commerce. Rather, those opinions are more properly viewed as setting guideposts regarding such congressional authority. As noted *supra*, Congress possesses broader power to regulate foreign commerce than interstate commerce. *See Japan Line*, 441 U.S. at 448, 99 S.Ct. 1813. This Court has identified no instance in which the United States Supreme Court invalidated a criminal statute for exceeding the bounds of Congress's authority to regulate foreign commerce. Additionally, this statute addresses a problem of grave international consequences that does affect channels of foreign commerce. The exploitation of children by United States citizens, even when that exploitation occurs by those who travel outside of the United States, is considered by the President of the United States to be a significant problem that the United States has committed to address. *See* Response Ex. C (President George W. Bush, United Nations Address (Sept. 23, 2003)). Government action in this area also clearly implicates foreign policy and public health concerns. *See* Response Ex. E at 2 (Secretary of State Colin Powell commenting, "How can we turn away? If we want to have friends in the world, if we want to have better relations with the countries of the world, we have to help them with this kind of problem.... Can you imagine the spread of disease that is taking place with this kind of activity?").

Additionally, what appears to have been the Supreme Court's principal motivating factor for the Court's injection of renewed vitality in Commerce Clause limitations is not present here. Both *Lopez* and *United States v. Morrison*, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), rely on respect for the bedrock principle of federal-

**1136**

ism—separation of national concerns from those areas that are traditionally the subject of state concern. Although the vast majority of molestation prosecutions in the United States undoubtedly occur in state courts, the conduct proscribed by 18 U.S.C. § 2423(c) arises in the context of international travel. The states of this union do not regulate the conduct of their citizens abroad. This statute does not constrain or impinge upon state power, and therefore federalism concerns are absent. *See Shahani–Jahromi*, 286 F.Supp.2d at 736 ("The retention portion of the IPKCA does not constrain state power; to the contrary, it is aimed at ensuring that state custody orders are enforced and given effect."); *see also Bredimus*, 352 F.3d at 208 n. 10 ("[W]here congressional regulation of foreign commerce is involved, not only is there the necessity that the nation speak with one voice, in matters potentially affecting international relations, but also there is not the counter veiling concern of a federal invasion of the general police power of the states that is so extensive as to obliterate the distinction between national and local concerns and create a completely centralized government."). Like the international kidnaping targeted by the IPKCA, the conduct addressed by this statute is "a quintessentially international problem in need of a national response." *Shahani–Jahromi*, 286 F.Supp.2d at 736.

"Due respect for the decisions of a coordinate branch of Government demands that [a court] invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." *Morrison*, 529 U.S. at 607, 120 S.Ct. 1740. "[S]uch deference applies ... more forcefully to cases involving foreign commerce" than to cases involving interstate commerce. *Bredimus*, 352 F.3d at 208. Given this high degree of deference, the Court must find that Congress validly enacted 18 U.S.C. § 2423(c) within its authority under the Commerce Clause.

## III. CONCLUSION

The Court DENIES Clark's motion to dismiss (Dkt. # 44). The Clerk of the Court is directed to send copies of this Order to all counsel of record.