HRUZ, J.
¶1 Marshawn Johnson appeals a judgment of conviction for possession with intent to deliver heroin and an order denying his motion for postconviction relief. He contends the circuit court erroneously exercised its sentencing discretion because the court based its sentence in part on the fact that Johnson was from Chicago, Illinois, and had traveled to Superior, Wisconsin, to commit his crime. Johnson contends such a consideration violated the Privileges and Immunities Clause of the United States Constitution. See U.S. CONST. art. IV, § 2, cl. 1. We reject this argument because the record shows Johnson was not sentenced because he was from Chicago, but rather because he had brought heroin from another area to be distributed locally. We conclude such a consideration did not violate the Privileges and Immunities Clause, and we affirm.
BACKGROUND
¶2 Johnson was arrested during the execution of a search warrant for narcotics upon a residence located on Ogden Avenue in Superior, Wisconsin. A number of suspects were arrested at that time, including Johnson, Matthew Thompson, Lydia Higgins, and Michael Jenkins. Jenkins was found with a large bag of heroin on his person weighing approximately fifty-nine grams. Additional packages of heroin were found in the residence, one of which weighed approximately sixteen grams and had Johnson's DNA present on it. Following a trial, a jury returned a guilty verdict against Johnson on one count of possession with intent to deliver between ten and fifty grams of heroin as party to the crime.
¶3 Thompson and Higgins testified against Johnson at trial pursuant to a cooperation agreement with the prosecution. They resided at the Ogden Avenue address and both were heroin addicts. Thompson testified that he received instructions from an individual named "Bone" to pick up Johnson and Jenkins, who were coming from Chicago, at a bus stop in Duluth, Minnesota. The pair planned to stay with Thompson and Higgins for several days, dealing drugs out of the Ogden Avenue residence. Thompson and Higgins received free heroin in exchange for their assistance in distributing the narcotics in Superior.
¶4 Johnson testified in his own defense. He testified that he and Jenkins had come to Superior from Chicago "to meet girls." Johnson stated that he did not know that Jenkins was dealing heroin and that he disapproved of the activity. He denied knowing about or assisting in any way Jenkins' trafficking of narcotics. The defense theory at trial was that Thompson and Higgins were not credible because they were testifying pursuant to agreements with the prosecutor, whereas Johnson had not received a deal because he was African-American.
¶5 Johnson was sentenced to eight years' initial confinement and ten years' extended supervision. In remarking upon the seriousness of the offense, the circuit court emphasized the heroin problem plaguing Superior and the "significant amount of heroin" that Johnson had possessed with the intent to distribute. The court also emphasized that Johnson had traveled from Chicago to deliver the heroin into the Superior community. In discussing Johnson's character, the court remarked that Johnson's attempts to blame Jenkins for the drug dealing were "unbelievable." Contrary to defense counsel's arguments, the court viewed the fact that Johnson was not dealing heroin to feed an addiction as an aggravating factor, characterizing him as a "serious dealer." The court also found that the need to protect the public from the severe consequences of heroin addiction justified a lengthy sentence. The court briefly addressed the treatment of Johnson's accomplices, noting that they perhaps should not have benefitted from lenient treatment, but it distinguished them from Johnson by noting that they had cooperated whereas Johnson had been "willfully ... inadequate in any acceptance of responsibility."[1]
¶6 Johnson filed a postconviction motion seeking an order vacating his sentence and resentencing. Johnson argued that his sentence was based on an improper factor-namely that he had traveled from Chicago to deliver drugs in Superior. Johnson asserted that this consideration violated the United States Constitution's Privileges and Immunities Clause. In Johnson's view, he "should have been sentenced no differently for having come from Chicago, than he would have been sentenced had he lived in Superior." The circuit court denied Johnson's motion, reasoning that Johnson was not given a prison sentence because he was from Chicago, but rather because he was both a "wholesaler and a retailer" as opposed to a "street-level dealer." Johnson now appeals.
DISCUSSION
¶7 We review a circuit court's sentencing decisions using the erroneous exercise of discretion standard. State v. Loomis , 2016 WI 68, ¶30, 371 Wis. 2d 235, 881 N.W.2d 749. A defendant has a constitutional due process right to be sentenced based upon accurate information, State v. Harris , 2010 WI 79, ¶32, 326 Wis. 2d 685, 786 N.W.2d 409, and a circuit court erroneously exercises its discretion when it relies upon "clearly irrelevant or improper factors," id. , ¶30. Because we afford sentencing decisions a "presumption of reasonability" consistent with our strong public policy against interference with the circuit court's discretion, the defendant bears the burden of showing by clear and convincing evidence that the court erroneously exercised its sentencing discretion. Harris , 326 Wis. 2d 685, ¶30 ; Loomis , 371 Wis. 2d 235, ¶31.
¶8 Johnson argues he was given a harsher sentence than his accomplices received because he traveled to Superior from Chicago.[2] Johnson further argues that a circuit court's consideration of whether a defendant is from another state violate the Privileges and Immunities Clause of the United States Constitution, which provides as follows: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. CONST. art. IV, § 2, cl. 1. The Privileges and Immunities Clause "expresses the accommodation of the principle of equality of rights of citizens and non-citizens with the needs and interests of the state as a sovereign entity and helps 'fuse into one nation a collection of independent, sovereign states.' " Taylor v. Conta , 106 Wis. 2d 321, 330, 316 N.W.2d 814 (1982) (quoting Toomer v. Witsell , 334 U.S. 385, 395 (1948) ). By violating his constitutional rights, Johnson argues the circuit court relied on an unlawful and improper sentencing factor.
¶9 Johnson contends his Privileges and Immunities argument is buttressed by Buckner v. State , 56 Wis. 2d 539, 202 N.W.2d 406 (1972).[3] In that case, the circuit court remarked at sentencing that the defendant and his accomplices in a murder were "from Chicago, [and] came in here to have a little fun in Madison." Id. at 551. In commenting upon the need for the defendant's sentence to have a deterrent effect, the court noted the apparent recent rise in the number of first-degree murder cases, and it stated, "Well, I think it's about time that the word got around that this cannot happen in Madison, Wisconsin." Id. Our supreme court rejected the defendant's Privileges and Immunities argument there, remarking that there had been no showing that the court "relied, in its determination of the proper sentence, upon the fact that defendant was from Chicago." Id. at 552. Rather, the court stated the transcript showed the court was making "a general protestation against the rise in callousness for human life." Id.
¶10 Even if we assume without deciding that Buckner supports a general rule that a Privileges and Immunities violation occurs when a circuit court bases a defendant's sentence on the fact that he or she resides in another state, Johnson has not shown that such a violation occurred here. The circuit court here did not show a general disdain for people from Chicago. Rather, the court focused on Johnson's conduct in bringing prohibited substances into the Superior community from another location. In that sense, not only did Johnson deliver narcotics in Superior like his accomplices, but he also sourced the drugs from another location and brought them to be delivered. The court therefore reasonably concluded that Johnson's conduct was more blameworthy than that of his accomplices, all of whom had cooperated with authorities and, as to the Superior residents Thompson and Higgins, were dealing narcotics as a result of their addiction.
¶11 Indeed, the very passage from Johnson's sentencing that he relies on in support of his Privileges and Immunities argument actually shows that no such violation occurred. The circuit court stated:
The need to protect the public, and this is where I think there's not much mitigation. We have specific and general deterrence. Specifically[,] Mr. Johnson needs to get the message he cannot go into our community and sell drugs and the community and those around the community need to get the message they're not going to bring heroin into Superior and sell it to our people. They cannot do it and that's the aggravating factor[,] bringing this drug from Chicago into the Superior community. It's a horrible drug. It makes addiction horrible.
Again, this passage demonstrates that the court's primary concern was not where Johnson lived, but rather that he had brought drugs from that location into the Superior community to distribute them. The court's message of general deterrence was not targeted specifically at individuals residing in Chicago, but rather at any person outside of Superior, including in surrounding communities. In focusing on the lenient treatment Thompson and Higgins received, Johnson fails to acknowledge that unlike him, they did not personally transport narcotics from another location for local distribution.
¶12 Johnson further asserts the circuit court must have impermissibly considered where Johnson lived, as the location from which a defendant traveled is irrelevant to establish the crime of possession with intent to deliver. This argument conflates the guilt phase with the sentencing phase of a criminal case. Although the State need not have proved that Johnson traveled with narcotics from another place for him to be convicted of possession with intent to deliver, the sentencing court was not prohibited by the Privileges and Immunities Clause from treating the fact that he had done so as an aggravating factor. It is well established that sentencing courts must acquire full knowledge of the of the convicted defendant's character and behavior pattern before imposing sentence. State v. Allen , 2017 WI 7, ¶30, 373 Wis. 2d 98, 890 N.W.2d 245.
¶13 Johnson also argues that "getting on a bus and traveling to another State is not an aggravating factor." This assertion is borderline frivolous. Nothing in the sentencing transcript indicates Johnson was sentenced merely for interstate travel on a bus. Rather, the circuit court very clearly emphasized that Johnson had brought harmful narcotics across state lines and into a community that was being severely damaged by heroin use. In no way was the court's sentencing determination based upon Johnson's otherwise innocent travel amongst the several states. "While the right to travel is well-established, no federal court has ever held that an individual has a fundamental right to travel for an illicit purpose." United States v. Bredimus , 352 F.3d 200, 210 (5th Cir. 2003).[4]
¶14 In sum, even accepting arguendo the legal premise that it violates the Privileges and Immunities Clause for a sentencing court to sentence a defendant based upon the location of his or her residence, the circuit court did not commit any such error here. The court fashioned a sentence that was based not on where Johnson lived but what he had done, as well as the need to deter others in the surrounding areas from similar conduct in the future. The record does not support Johnson's claims that he was given a harsher sentence because he was from Chicago.
By the Court. -Judgment and order affirmed.
Not recommended for publication in the official reports.

According to the defense, Jenkins and Johnson, both of the individuals who had come from Chicago, received "lengthy prison sentences." Thompson and Higgins, both of whom resided in Superior, were given probationary dispositions for their cooperation. Jenkins apparently received a lesser sentence than Johnson because he also cooperated with police.

We note that, at times, Johnson refers to "considerable disparities" between the sentences he and Jenkins received, both of whom are African-Americans from Chicago, and the sentences Thompson and Higgins received, both of whom are Caucasian and from Superior. Johnson does not develop any argument that his race formed a basis for his sentence, nor that the sentences his accomplices received should justify resentencing independent of his Privileges and Immunities claim. Therefore, our analysis is limited to the sole issue he actually raises-whether he was sentenced in violation of the Privileges and Immunities Clause.

Johnson also cites an unpublished per curiam opinion of this court in his briefs. While we acknowledge that there is a paucity of case law in Wisconsin regarding the Privileges and Immunities Clause in the context of criminal sentencing, we cannot abide Johnson's citation to an unpublished per curiam opinion in violation of Wis. Stat. Rule 809.23(3)(b) (2017-18). We remind counsel that such opinions may not be cited for any purpose, and we admonish counsel that future violations of this rule may result in sanctions. See Wis. Stat. Rule 809.83(2) (2017-18).

We acknowledge certain factual differences between Johnson's case and that of the defendant in United States v. Bredimus , 352 F.3d 200 (5th Cir. 2003), including the international nature of the defendant's travel there. Still, the basic point stands that Johnson's travel was not innocent, but rather was for the specific purpose of acting as a drug courier.